UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-22304-GAYLES

**DIEGO RAFAEL MEDINA RODRIGUEZ**,

    Plaintiff,

v.

**KRISTI NOEM**, *et al.*,

    Defendants.
_____/

## ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)

**THIS CAUSE** is before the Court on Plaintiff Diego Rafael Medina Rodriguez's *pro se* Complaint under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). [ECF No. 1]. Plaintiff alleges that federal officials violated his constitutional rights while he was confined at the Federal Detention Center in Miami, Florida. Because Plaintiff seeks leave to proceed *in forma pauperis*, [ECF No. 3], the Complaint must be screened under 28 U.S.C. § 1915(e). For the following reasons, the Complaint is **DISMISSED WITHOUT PREJUDICE**.

    **I.**    **BACKGROUND**

Plaintiff is an immigration detainee currently confined at the Krome Service Processing Center ("Krome") in Miami, Florida. He alleges that on April 15, 2025, he and forty-nine other immigration detainees were transferred from Krome to the Federal Detention Center ("FDC") in Miami—a detention center for federal pretrial detainees—and therein subjected to harsh conditions of confinement and excessive force. Plaintiff alleges that when he and the other detainees arrived at FDC, officers "yelled and screamed" at them and "handled [them] in a very unprofessional

manner." [ECF No. 1 at 12]. Plaintiff states that he and the other detainees were crammed into a small holding cell for hours, where they were not given toilet paper, water, or adequate food. *Id*.

Plaintiff claims that he became sick due to the lack of food and water and the fact that he was forced to sleep on the floor. *Id*. at 13. To get the attention of FDC officers so that Plaintiff and other detainees could receive medical attention, a few detainees began causing a disturbance by throwing trays and flooding their cells. *Id*. This prompted FDC officers to call in the "Disturbance Control Team," which fired concussion grenades into the detainees' cells. *Id*. The officers then ordered the detainees to get on the ground, handcuffed their wrists "extremely tightly," and escorted them to the Special Housing Unit ("SHU"). *Id*. at 13–14.

Plaintiff alleges that while they were confined in the SHU, he and the other detainees were denied paper tissue, mattresses, blankets, food, and water. *Id*. at 14. Plaintiff claims that "[i]t was so cold [in the SHU] that it felt like [ ] complete torture." *Id*. Plaintiff alleges that he and the other detainees were transported back to Krome at around 10:00 a.m. the next day, but once there, they were left in a holding cell for over thirty hours and were again forced to sleep on the floor. *Id*. Plaintiff claims that he did not return to his dormitory until April 17, 2025, and was thus unable to sleep for three consecutive days. *Id*. Plaintiff alleges that the ordeal exacerbated his ankle and lower back injuries and caused him "indescribable and intolerable back pain." *Id*. Plaintiff also alleges that his "wrists were hurting for days after being handcuffed extremely tight[ly] for hours." *Id*. at 5.

Liberally construed, these allegations raise claims for unconstitutional conditions of confinement and excessive force. Plaintiff sues four Defendants: (1) William K. Marshall III, Director of the Bureau of Prisons ("BOP"); (2) FDC; (3) the FDC medical staff and director; and (4) Kristi Noem, Secretary of the U.S. Department of Homeland Security. *Id*. at 2–3. Plaintiff seeks damages for relief. *Id*. at 5.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the district court shall dismiss an action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A pleading fails to state a claim for relief when it does not contain sufficient "factual matter (taken as true)" to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)."). A complaint need not contain detailed factual allegations, but it must provide as grounds for relief something more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal, a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, the Court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted). The liberal construction afforded to *pro se* pleadings does not authorize *pro se* litigants to file impermissible "shotgun" pleadings. *See Toth v. Antonacci*, 788 F. App'x 688, 691 (11th Cir. 2019) (affirming dismissal of *pro se* complaint on shotgun pleading grounds).

## III. DISCUSSION

Plaintiff's Complaint must be dismissed for three reasons. First, it is an impermissible "shotgun" pleading. Second, even if it were not a shotgun pleading, it fails to state a claim for

relief under *Bivens* because its claims arise in a context to which *Bivens* cannot be extended. And third, *Bivens* cannot be used to sue federal agencies or supervisory officials for the acts of their subordinates.

### A. *Dismissal as a Shotgun Pleading*

Shotgun pleadings are complaints that violate either Federal Rule of Civil Procedure 8(a)(2), 10(b), or both. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." *Id*. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." *Yeyille v. Miami Dade Cnty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016).

The Eleventh Circuit has identified four types of shotgun pleadings. *See Weiland*, 792 F.3d at 1321–23. The first type is a "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. at 1321. The second type of shotgun pleading is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. The third type is a complaint that does not separate into a different count each cause of action or claim for relief. *Id*. at 1322–23. The fourth type is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against." *Id*. at 1323. "The unifying characteristic of all types of

shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*.

Plaintiff's Complaint falls primarily into the third and fourth categories of shotgun pleadings. Its factual allegations are styled as a letter to this Court and written in narrative form; as such, the Complaint fails to separate its claims against each Defendant into a different count. *See Yeyille*, 643 F. App'x at 884–85 (stating that a complaint "written in narrative, diary-like form" was a "quintessential shotgun pleading of the second type identified in *Weiland*."). Therefore, it is "impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

Further, the Complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. Plaintiff mentions only two officers by name in his factual allegations—Officers O'Conner and Toothle—but neither officer is named as a Defendant, and none of the named Defendants are mentioned in the factual allegations. Moreover, Plaintiff names FDC "medical staff and director" collectively as a single Defendant, without identifying which individual officials the claims are brought against. *See LaCroix v. W. Dist. of Kentucky*, 627 F. App'x 816, 819 (11th Cir. 2015) (affirming dismissal of complaint that asserted claims "against the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct."). To state a claim under § 1983 or *Bivens*, a plaintiff must clearly identify each defendant who committed each specific act that forms the basis of his claims. *See LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) ("section 1983 requires proof of an affirmative causal connection between the actions

taken by a particular person under color of state law and the constitutional deprivation"); *Brown v. Tallahasse Police Dep't*, 205 F. App'x 802 (11th Cir. 2006) (affirming dismissal of *pro se* complaint that "failed to name individual defendants and failed to articulate specific claims against those defendants.").

In sum, Plaintiff's Complaint is an impermissible shotgun pleading that fails to give Defendants or this Court enough clarity to discern Plaintiff's precise causes of action or the facts underlying those claims. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.") (quotations omitted)). Accordingly, the Complaint must be dismissed without prejudice.

### B. *Lack of a* **Bivens** *Remedy*

In *Bivens*, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "[C]ourts generally apply § 1983 law to *Bivens* cases." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (per curiam) (citations omitted). To state a claim for relief under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). However, the scope of the *Bivens* remedy is limited. Historically, the Supreme Court has applied *Bivens* to only three categories of constitutional claims: (1) unreasonable searches and seizures under the Fourth Amendment (*Bivens*); (2) gender discrimination under the Due Process Clause of the Fifth Amendment (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) cruel and unusual punishment under the Eighth Amendment (*Carlson v. Green*, 446 U.S. 14 (1980)).

"'[I]n all but the most unusual circumstances,' [courts] should not use *Bivens* to recognize new constitutional-claim causes of action for damages against federal officials." *Johnson v. Terry*, 119 F.4th 840, 843 (11th Cir. 2024) (quoting *Egbert v. Boule*, 596 U.S. 482, 486, 491 (2022)). The Supreme Court has emphasized that courts generally should not extend *Bivens* beyond the three causes of action previously recognized. *See Egbert*, 596 U.S. at 491("[W]e have emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017))). To determine whether to extend *Bivens*, courts engage in a two-step inquiry. First, they "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different form the three cases in which the Court has implied a damages action." *Terry*, 119 F.4th at 851 (quotation omitted). Second, if the case arises in a new context, courts should not extend *Bivens* "if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id*. (quoting Egbert, 596 U.S. at 492).

Here, because Plaintiff is an immigration detainee, not a convicted prisoner, his claims for unconstitutional conditions of confinement and excessive force arise under the Fifth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015). Thus, Plaintiff's claims arise in a "new *Bivens* context." *Ziglar*, 582 U.S. at 149 (holding that a federal pretrial detainee's claims against the Warden for allowing abuse by prison guards arose in a new *Bivens* context because *Carlson* addressed an Eighth Amendment violation whereas the detainee's claim involved a Fifth Amendment violation). In *Ziglar*, the Supreme Court acknowledged that in *Carlson*, it "did allow a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care" under the Eighth Amendment. *Id*. at 147. But the Court recognized that "a case can present a new context for *Bivens* purposes if it implicates a different constitutional right[.]" *Id*. at 148. And it held that

the claim at issue in *Ziglar*—a Fifth Amendment claim brought by a detainee—arose in a new context because "*Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth." *Id*.

In *Johnson v. Terry*, the Eleventh Circuit held that *Bivens* should not be extended to a federal pretrial detainee's claims for failure to protect and deliberate indifference to serious medical needs under the Fifth Amendment. 119 F.4th at 852–62. The Eleventh Circuit found, as the Supreme Court did in *Ziglar*, that the detainee's Fifth Amendment claims presented a new *Bivens* context. *Id*. at 853–59. And it found that the existence of a BOP administrative remedy program was a "special factor" that precluded extending *Bivens*. *Id*. at 859–62.

The reasoning of *Terry* applies to Plaintiff's claims. His claims—which, as mentioned, arise in a new *Bivens* context—concern actions by BOP officials and thus can be addressed through the BOP administrative remedy program. Even if Plaintiff does not have access to that program in immigration detention, the Eleventh Circuit in *Terry* rejected the plaintiff's argument that his lack of access to the program was a relevant consideration. The Eleventh Circuit explained that "it does not matter whether . . . the administrative remedy program adequately addressed [the plaintiff's] complaints" because "[t]he alternative remedy question is a general one, not a specific one. . . ." *Id*. at 860. As the court stated, "the existence of a grievance procedure is a special factor that by itself is enough to rule out inferring a *Bivens* cause of action." *Id*. at 861. Given the Eleventh Circuit's foreclosure of similar claims in *Terry*, *Bivens* should not be extended to Plaintiff's claims.

C. ***No* Bivens *Claims Against Executive or Supervisory Officials or Federal Agencies***

Even if *Bivens* could be extended to Plaintiff's claims, the only Defendants identified by name in the Complaint cannot be sued under *Bivens*. Plaintiff sues two executive or supervisory officials: DHS Secretary Noem and BOP Director Marshall. "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar*, 582 U.S. at 141. Therefore, *Bivens* is

not a proper vehicle to assert a claim against an executive or supervisory official based on their subordinates' alleged constitutional violations. *Id*.; *see Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) ("It is well established in this circuit that supervisory officials are not liable under *Bivens* for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability") (quotation omitted and alterations adopted). Plaintiff does not allege that Secretary Noem or Director Marshall personally participated in the alleged constitutional violations. Therefore, he cannot maintain a *Bivens* action against these officials. *See Gonzalez*, 325 F.3d at 1234 ("Supervisory liability under *Bivens* occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.") (quotation omitted and alterations adopted).

Likewise, Plaintiff cannot sue FDC—or the BOP, which administers that facility—because federal agencies cannot be sued under *Bivens*. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994); *see also Okpala v. Jordan*, 193 F. App'x 850, 852 (11th Cir. 2006) (affirming dismissal of a *Bivens* claims against the Federal Correctional Institute in Talladega, Alabama).

## IV. LEAVE TO AMEND

Although courts typically should grant *pro se* plaintiffs at least one opportunity to amend a complaint—especially where, as here, the complaint is dismissed on shotgun pleading grounds, *see Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)—the Court will not do so here because, given the above analysis, it is exceedingly unlikely that an amended complaint could state a claim under *Bivens*, *see Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (holding that a district court need not grant leave to amend where a more carefully drafted complaint would not state a claim for relief). Nonetheless, dismissal is without prejudice and will not preclude Plaintiff from refiling his claims in a new action, if he so chooses. *Cf. Smith*

*v. Valdivia*, No. 24-11700, 2024 WL 5117156, at *1–2 (11th Cir. Dec. 16, 2024) (holding that a district court must grant a plaintiff leave to amend if a dismissal without prejudice would preclude him from refiling his claims in a new case within the statute of limitations). Florida applies a four-year statute of limitations to § 1983 and *Bivens* claims. *See Ellison v. Lester*, 275 F. App'x 900, 901–02 (11th Cir. 2008). Because Plaintiff's claims arose in April of 2025, he has until April of 2029 to bring his claims.

V.    **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**. This case is **CLOSED**, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers at Miami, Florida, this 28th day of May 2025.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   **Diego Rafael Medina Rodriguez**, *pro se*
      A-209497072
      Krome Service Processing Center
      Inmate Mail/Parcels
      18201 SW 12th Street
      Miami, FL 33194